UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ROBERT STURTEVANT,<br><br>       Plaintiffs,<br><br>v.<br><br>XEROX COMMERCIAL SOLUTIONS, LLC,<br><br>       Defendant. | Case No. C16-1158RSM<br><br>ORDER GRANTING MOTION TO DISMISS AND COMPEL ARBITRATION |

## I.    INTRODUCTION

This matter comes before the Court on Defendant's Motion to Dismiss and Compel Arbitration.  Dkt. #7.  Defendant argues that Plaintiff signed an agreement that arbitration would be the exclusive method of resolving most legal issues, and therefore this Court lacks jurisdiction to hear his claims.  *Id.*  Plaintiff opposes the motion, primarily arguing that he never entered into such an agreement.  Dkt. #9.  For the reasons discussed below, the Court now finds Plaintiff's arguments contrary to the evidence in the record and GRANTS Defendant's motion.

## II.    BACKGROUND

On June 27, 2016, Plaintiff Robert Sturtevant served a Summons and Complaint against Defendant, his former employer.  Dkt. #1 at ¶ 1 and Ex. 1 thereto.  In his Complaint, Plaintiff alleges three causes of action: (1) discrimination under Washington's Law Against Discrimination ("WLAD"); (2) retaliation under the WLAD; and (3) failure to accommodate

ORDER OF DISMISSAL
PAGE - 1

under the WLAD.  Dkt. #1, Ex. 1 at ¶ ¶ 3.2 to 3.14.  The Complaint reflected that the lawsuit was to proceed in King County Superior Court; however, it does not appear that the lawsuit was ever filed in that Court.  *See* Dkt. #8.  In any event, on July 27, 2016, Defendant removed the matter to this Court.  Dkt. #1.

Plaintiff's allegations arise out of his former employment with Defendant.  On or about September 11, 2008, Plaintiff applied for employment with Affiliated Computer Services ("ACS").  Dkt. #7, Ex. A at ¶ 13.  He applied using ACS's electronic application process.  *Id.* That process allowed applicants to electronically complete, review and sign documents.  *Id.* at ¶ 14.  Likewise, it allowed new hires to electronically review and sign documents.  *Id.*  In order to utilize the process, applicants were required to create an account with a private login name and password.  *Id.* at ¶ 15.  As part of his application process, Plaintiff provided his personal information, and electronically agreed to various company policies, including a consent to be bound by a Dispute Resolution Plan ("DRP").  *Id.* at ¶ ¶ 16-17 and Ex. A-3.  That DRP included a provision that the plan provided the exclusive means for resolving disputes relating to the terms and conditions of employment.  *Id.*  Plaintiff also electronically signed a Pre-Employment Consent to Alcohol/Drug Screening and an Agreement not to Use Former Employers' Confidential or Trade Secret Information, the day before.  Dkt. #11, Ex. A at ¶ ¶ 7-8 and Ex. A-9 thereto.

On or around October 2008, Plaintiff was hired by Affiliated Computer Services ("ACS") as a supervisor in King County, WA.  Dkt. #1-1 at ¶ 2.2.  On October 15, 2008, using the same personal login name and password, Plaintiff electronically signed seven other documents, including a direct deposit form and acknowledgement of the Employee Guidebook.

*Id.* and Dkt. #7, Ex. A at ¶ 21 and Ex. A-6 thereto.  The Employee Guidebook also referenced the DRP.  Dkt. #7, Ex. A at ¶ 21 and Ex. A-7 thereto.

Plaintiff was subsequently promoted to Operations Manager.  Dkt. #1-1 at ¶ 2.2.

In 2010, Defendant Xerox Commercial Solutions, LLC ("XCS") merged with ACS.  *Id.* at ¶ 2.3.

Plaintiff was subsequently promoted to Strategic Business Unit Manager.  *Id.* at ¶ 2.4.

On September 14, 2012, Defendant sent an email notification regarding revisions to the DRP.  Dkt. #7, Ex. A. at ¶ 18.  The email was sent to Plaintiff at his business email address.  It included a hyperlink to the Revised DRP.  *Id.* at Ex. A-4.  XCS utilized a computer program to track employee receipt of the email.  *Id.* at ¶ 19.  That program reflects that Plaintiff opened the email on September 27, 2012.  *Id.* at ¶ 19 and Ex. A-5 thereto.  The email stated, "by continuing your employment with [Defendant] after the Effective Date you are accepting and consenting to be bound by the revised DRP."  Dkt. #7, Ex. A at ¶ 19 and Ex. A-5 thereto.

On May 8, 2013, Plaintiff completed a training entitled "Dispute Resolution Plan Rules (September 2012 revision)".  Dkt. #11-1 at and Ex. A-11 thereto.  As part of the training, Plaintiff was asked to confirm that he reviewed the course material for the presentation.  That course material contained the revised DRP and a version of the email notice that had been sent in September of 2012.  *Id.* at Ex. A-12.

On or about March 17, 2015, Plaintiff suffered a debilitating illness.  Dkt. #1-1 at ¶ 2.5.  A couple of days later, he collapsed at work and received emergency medical attention.  *Id.* at ¶ ¶ 2.7-2.8.  On March 24, 2015, Plaintiff requested medical leave for March 26, 2015.  *Id.* at ¶ 2.9.  The request was denied.  *Id.* at ¶ 2.10.  On March 25, 2016, Defendant terminated Plaintiff's employment.  *Id.* at ¶ 2.11.  The instant lawsuit followed.

After Defendant removed the action to this Court, Defendant moved to dismiss Plaintiff's claims and compel arbitration.  Dkt. #7.  Defendant argues that Plaintiff accepted the Xerox DRP, which clearly notified him that "virtually all legal Disputes (as defined in the DRP) concerning your employment, the terms and conditions of your employment and/or your separation from employment are subject to final and binding resolution exclusively by arbitration."  Dkt. #7, Ex. A-4.  Plaintiff opposes the motion, stating that he never signed an arbitration agreement during his employment, or made any agreement to be bound by the Revised DRP.  Dkt. #10 at ¶ ¶ 9-10 [sic].

### III.      DISCUSSION

**A. Plaintiff's Motion to Strike**

As an initial matter, the Court addresses Plaintiff's motion to strike.  Plaintiff has moved to strike the Declaration of Shirley Pierce filed in support of Defendant's motion.  Dkt. #9 at 3.  Plaintiff argues that Ms. Pierce cannot properly authenticate the records attached to her Declaration because she has no actual knowledge of either Plaintiff's agreement to the DRP or the company's operations at the time Defendant initially signed the agreement.  *Id.*  Plaintiff's motion is DENIED.

Ms. Pierce is the Vice-President of Human Resources for Xerox Business Services, LLC ("XBS"), and has been employed in that role since August of 2013.  Dkt. #7, Ex. A at ¶ 2. XBS is a wholly-owned subsidiary of Xerox Corporation.  *Id.* at ¶ 3.  XBS was formerly known as ACS.  *Id.* at ¶ 4.  Xerox Commercial Solutions, LLC, the Defendant in this action, is a wholly owned subsidiary of XBS.  *Id.* at ¶ 5.  In her position, Ms. Pierce has access to the business and personnel records of current and former employees of XBS and its subsidiaries, including XCS.  Dkt. #7, Ex. A at ¶ 7.

ORDER OF DISMISSAL
PAGE - 4

Courts in the Ninth Circuit have long found that the Declaration of a records custodian may satisfy person knowledge requirements for business records as evidence. *See Washington Cent. R.R. Co., Inc. v. Nat'l Mediation Bd.*, 830 F. Supp. 1343, 1352–53 (E.D. Wash.1993); *Edwards v. Toys 'R Us*, 527 F.Supp.2d 1197, 1201 (C.D. Cal.2007) (citing *In re Kaypro*, 218 F.3d 1070, 1075 (9th Cir.2000) ("Personal knowledge may be inferred from a declarant's position."). Indeed, "personal knowledge can come from review of the contents of files and records." *Washington Cent. R.R. Co.*, 830 F. Supp. at 152-53. Washington State courts have found the same. *See Barkley v. GreenPoint Mortg. Funding, Inc.*, 190 Wn. App. 58, 67, 358 P.3d 1204 (2015).

Accordingly, the Court finds Ms. Pierce's Declaration and Supplemental Declaration appropriate and declines to strike them or the Exhibits attached thereto.

## B. Agreement Between the Parties

The Court next addresses whether there is a binding agreement between Plaintiff and Defendant to exclusively use arbitration to resolve Plaintiff's employment complaints. Plaintiff argues that there is a genuine issue of material fact as to whether he signed the arbitration agreement under Washington law, and therefore that question must be submitted to a jury in this Court for resolution. Dkt. #9 at 4-8. Specifically, he argues that there is no valid agreement under Washington law, Defendant has presented no evidence of an agreement between the parties, and a new agreement was never created in 2012 binding Plaintiff. *Id.* For the reasons discussed herein, the Court disagrees.

Plaintiff first argues that there was no mutual assent to the DRP when Mr. Sturtevant began employment, and therefore he never agreed to arbitration. Dkt. #9 at 5-6. Plaintiff relies on *Neuson v. Macy's Dept. Stores, Inc.*, 160 Wn. App. 786, 796, 249 P.3d 1054 (2011), for the

ORDER OF DISMISSAL
PAGE - 5

proposition that an e-signature on an arbitration agreement is not reliable when the employer had access to the employee's identifying information.   Dkt. #9 at 5.   Plaintiff's argument is misguided.

*Neuson* involved an in-house program that Macy's had implemented to resolve disputes. *Id.* at 789.   Employees had to affirmatively opt out of arbitration to avoid being bound to arbitrate.   Macy's produced declarations that it mailed the in-house program materials and election forms to the employee, who denied receiving them by mail.   The Spokane Superior Court found that Macy's had made a necessary showing to establish the presumption of mailing and that the employee failed to opt out of the program, and then ordered arbitration.   *Id.* at 789-91.   On appeal, the Washington State Court of Appeals reversed and remanded.   *Id.* at 797. The Court of Appeals discussed "the mailbox rule" at length, and agreed that Macy's had made the requisite showing for a presumption of mailing.   *Id.* at 793.   Further, the court agreed that the Declarations supported the trial court's findings, but ultimately found that the trial court was not privileged to weigh the evidence in ruling on this summary proceeding.   The court of appeals determined that the employee had met her burden to produce sufficient evidence to rebut the presumption that the employer mailed and she received the materials necessary to opt out of the in-house arbitration program. Thus, questions of fact existed for the trier of fact.   *Id.* at 793-97.

The case is distinguishable from the instant matter.   Indeed, in *Neuson* there was no dispute about the electronic process used to verify notice of the arbitration program.   Rather, this was a dispute about whether the Plaintiff has received hard copy forms in the mail that would have allowed her to opt out of the program.   The court of appeals explained:

> Macy's gives each new employee a Solutions InSTORE brochure and an election form.   The new employee then uses a computer terminal to

ORDER OF DISMISSAL
PAGE - 6

complete the majority of the new hire paperwork electronically.   The electronic paperwork includes an acknowledgment form that the employee received the Solutions InSTORE brochure and understands her opportunity to decline arbitration.   The employee reads and signs each document electronically using her Social Security number, month and day of birth, and zip code.   Macy's computer program uses that personal information to generate an electronic signature unique to that employee.   Once the employee electronically signs a document, the computer then generates a confirmation page that lists the employee's name, the store site, the name of the form signed, and the date and time the employee signed it.   All completed new hire paperwork is stored in on-line personnel files.   It is also stored in a hard copy file.   The Northtown Macy's human resources assistant, Sarah Allie, recalled asking Ms. Neuson to complete new hire paperwork.   And Ms. Neuson's employee file includes a document confirming that she signed the acknowledgment form, which shows she received the Solutions InSTORE brochure and understood she had 30 days to opt out of arbitration.

. . .

We, then, turn to the evidence supporting Ms. Neuson's position that she did not receive an opt-out form and, therefore, could not opt out of arbitration.

Ms. Neuson lived at three separate addresses while working at the Silverdale Macy's.   She swore that an attorney advised her to opt out of arbitration when in Silverdale and that she did so. . . .   But she ultimately denies by sworn affidavit that Macy's gave her the documents necessary to opt out of the Solutions InSTORE arbitration provision.

Ms. Neuson had a 30-day break in employment between the Macy's in Silverdale and the Northtown Macy's in Spokane.   But she says she was treated as a new hire by the Northtown Macy's.   She claims that break in service and her treatment as a new hire voids whatever efforts Macy's might have made to notify her in Silverdale of the opportunity to opt out of arbitration.   Macy's responds there must be a 60-day break in service to trigger its obligation to again send the opt-out materials to an employee but that it did so anyway.

. . .

The resolution of the underlying factual dispute here is complicated by the use of an electronic signature.   This signature is essential to Macy's position that Ms. Neuson received the materials and form necessary to opt out of arbitration.   It is not a signature in the traditional sense but rather a string of numbers consisting of an employee's Social Security number, birth date,

ORDER OF DISMISSAL
PAGE - 7

> and zip code.  The information in Ms. Neuson's electronic signature is unique to her, and Macy's urges that it is sufficient to show that Ms. Neuson received the opt-out form.  We find evidence that the Northtown Macy's has a procedure and that its procedure was followed, but we do not find evidence of how or why the information on this electronic signature would be unavailable to anyone other than Ms. Neuson and, ultimately, why it is the same as or better than a traditional signature.

*Neuson*, 160 Wn. App. at 793-96.

This last portion of the court's opinion is critical, because that is where Mr. Sturtevant points in support of his argument in the instant matter.  However, the reason that the Court discussed the "complication" of the electronic signature was because Ms. Neuson had argued "that the paperwork could have been completed and backdated by someone other than her because the individual forms used her maiden name and one form referred to a driver's license number that was not issued to her until [after her start date]."  *Neuson*, 160 Wn. App. at 791. As a result, the Court found that there was a question of fact as to whether she received the opt-out form.

Mr. Sturtevant has made no similar arguments in the instant matter.  He does not claim that his company email address has changed over time, nor does he assert that he did not receive the other forms he reviewed and signed electronically on the same dates as he acknowledged the DRP, or that his signature does not appear on such forms.  In fact, as Defendant notes, to make such an assertion would beg the question of how he was hired in the first place.  *See* Dkt. #11 at 9-10.  Moreover, Mr. Sturtevant has presented no evidence to support his bald assertion that he did not agree to an arbitration agreement, that he did not consent electronically to such an agreement, or that he did not open his email providing notice of the agreement.  *See* Dkt. #10.  He has simply failed to refute the evidence in this record demonstrating his receipt and review of the DRP.

ORDER OF DISMISSAL
PAGE - 8

In addition, the Court rejects Plaintiff's argument that there is no agreement between Plaintiff and Defendant because Defendant failed to provide evidence that it acquired all employment contracts of ACS at the time it merged with Xerox.  *See* Dkt. #9 at 6-7.  Defendant provides the details of the acquisition through Ms. Pierce.  Dkt. #7, Ex. A at ¶¶ 3-6.  Further, Plaintiff fails to provide any legal support for his argument.

Likewise, Plaintiff's argument that he did not receive or agree to the 2012 Amended DRP fails for the same reasons as discussed above with respect to the original DRP.  Moreover, Plaintiff fails to acknowledge the evidence in the record that he completed a training on the amendment on May 8, 2013.  For all of these reasons, the Court finds that there was an agreement to arbitrate between Plaintiff and Defendant.

## C.  Federal Arbitration Act

Plaintiff does not dispute that the original and amended DRP are governed by the Federal Arbitration Act ("FAA").  Instead, he has argued only that an agreement does not exist between these parties.  *See* Dkt. #11.  Under Local Civil Rule 7, "[e]xcept for motions for summary judgment, if a party fails to file papers in opposition to a motion, such failure may be considered by the court as an admission that the motion has merit."  LCR 7(b)(2).  The Court considers Plaintiff's failure to respond as such an admission on this motion.

Further, the Court has reviewed Defendant's legal arguments pertaining to the FAA and motions to compel thereunder, and agrees that the original and amended DRP are governed by the FAA, and that Plaintiff should be compelled to arbitrate.  *See* Dkt. #7 at 9-11.

///

///

///

ORDER OF DISMISSAL
PAGE - 9

## IV.    CONCLUSION

Having reviewed Defendant's motion, Plaintiff's opposition thereto, Defendant's reply, and the Declarations and Exhibits in support thereof, along with the remainder of the record, the Court hereby finds and ORDERS:

1.  Defendant's Motion to Dismiss and Compel Arbitration (Dkt. #7) is GRANTED.

2.  All of Plaintiff's claims against Xerox Commercial Solutions, LLC are hereby DISMISSED WITH PREJUDICE, and they shall be resolved in accordance with the Xerox Business Services Dispute Resolution Plan.

3.  This matter is now CLOSED.

DATED this 19 day of September, 2016.


RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE

ORDER OF DISMISSAL
PAGE - 10